IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| NORFOLK SOUTHERN RAILWAY COMPANY,<br><br>                     Plaintiff,<br><br>v.<br><br>PREMIUM COAL COMPANY, INC.,<br><br>                     Defendant. | CIVIL ACTION NO. |

## COMPLAINT

Plaintiff Norfolk Southern Railway Company ("Norfolk Southern") hereby files this Complaint against defendant Premium Coal Company, Inc. ("Premium Coal"), and avers as follows:

### PARTIES

1. Norfolk Southern is incorporated under the laws of the Commonwealth of Virginia with its principal place of business located in Norfolk, Virginia.

2. Premium Coal is incorporated under the laws of Tennessee with its principal place of business located in Briceville, Tennessee.

### JURISDICTION

3. Jurisdiction in this matter is based upon 28 U.S.C § 1337 because this cause of action arises under the Interstate Commerce Act, 49 U.S.C. §10101, *et seq.*, and specifically 49 U.S.C. § 10746.

4. Jurisdiction in this matter is also based upon 28 U.S.C. §1332(a) as the matter in controversy exceeds $75,000.00 and is between entities incorporated under the laws of, and with principal places of business in, different states.

**VENUE**

5. Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the causes of action set forth in this Complaint occurred in Branchville, South Carolina, which is within this judicial district.

**PREDICATE FACTS**

6. Norfolk Southern operates as an interstate rail carrier subject to the jurisdiction of the United States Surface Transportation Board, and is governed by the provisions of the Interstate Commerce Act ("ICA"), 49 U.S.C. § 10101, *et seq.*

7. Consistent with 49 U.S.C. § 10746, Norfolk Southern has established rules related to the assessment and computation of demurrage, which is the charge assessed by rail carriers for holding railroad owned or controlled railcars for loading or unloading beyond a specified amount of time.

8. These rules are set forth in Norfolk Southern's Conditions of Carriage and incorporated tariffs and publications ("Conditions of Carriage"), which are publicly posted on the internet and subject to the jurisdiction and regulation of the United States Surface Transportation Board.

9. Upon information and belief, Premium Coal is a company engaged in the mining and sale of coal.

10. In or around August 2011, Premium Coal engaged Norfolk Southern to transport two separate shipments of coal for delivery to J&J Energy, Inc. ("J&J"), a coal broker, in Branchville, South Carolina (collectively the "Shipments").

11. Upon information and belief, Premium Coal was the owner of the coal while being transported by Norfolk Southern.

12. Prior to transport, Premium Coal, or an affiliated entity acting on Premium Coal's behalf and subject to Premium Coal's control, entered electronic bill of lading data for the Shipments using Norfolk Southern's AccessNS system.

13. Premium Coal identified itself as the shipper on the bills of lading for each of the Shipments.

14. Premium Coal also identified Lafarge as the consignee on the bills of lading, and J&J as the party to whom freight charge invoices should be issued.

15. Premium Coal did not execute the Section 7, non-recourse provision of the bills of lading.

16. The bills of lading incorporate the Norfolk Southern Conditions of Carriage and rate authority information, which in turn set forth the terms and conditions under which Norfolk Southern transported the Shipments.

17. Of relevance to this dispute, the Conditions of Carriage expressly state that the shipper shall be responsible for payment of any demurrage charges which accrue if a shipment of coal has been refused at destination because of the presence of rock or other debris, and the cars are not timely re-directed to other destinations or returned to their point of origin.

**Facts Related to August 27, 2011 Shipment**

18. In or around August 27, 2011, Premium Coal loaded Norfolk Southern railcars with coal and tendered them to Norfolk Southern for rail transportation from Turley, Tennessee to J&J in Branchville, South Carolina.

19. Norfolk Southern transported these railcars pursuant to Premium Coal's instructions and delivered them to J&J in Branchville on August 30, 2011.

20.     Upon receipt, J&J inspected the railcars, and found the cars to be holding coal mixed with rock and tree root debris.

21.     Because of its dire need for coal at the time, J&J unloaded as many of the railcars as it could, and then rejected the remaining railcars due to rock and debris on September 13, 2011.

22.     J&J rejected a total of 20 railcars due to rock and debris loaded with the coal.

23.     While Premium Coal and/or its agent was notified of the rejected rail cars, these 20 cars subsequently accrued 87 days of demurrage charges between September 13, 2011 and December 9, 2011.

24.     Pursuant to the terms set forth in the Conditions of Carriage, Premium Coal was assessed a total of $295,200.00 in demurrage charges for this shipment.

25.     Although demand has been made for payment of these charges, Premium Coal has failed and/or refused to pay.

**Facts Related to August 2, 2011 Shipment**

26.     In or around August 2, 2011, Premium Coal loaded Norfolk Southern railcars with coal and tendered them to Norfolk Southern for rail transportation from Turley, Tennessee to J&J in Branchville, South Carolina.

27.     Norfolk Southern transported these railcars pursuant to Premium Coal's instructions and delivered them to J&J in Branchville.

28.     J&J received delivery of the railcars on or about August 4, 2011 and unloaded 33 of the railcars without incident.

29.     J&J rejected the other 66 railcars of coal on August 5, 2011, because the coal had been loaded into aluminum cars, a type of railcar J&J did not have the ability to unload.

30. On August 25, 2011, with the express written permission of Premium Coal, J&J re-consigned 49 of these 66 rejected cars to Georgia Pacific, LLC ("Georgia Pacific"), in Cedar Springs, Georgia.

31. Norfolk Southern subsequently transported these 49 railcars pursuant to Premium Coal's instructions and delivered them to Georgia Pacific in Cedar Springs.

32. Of these 49 cars, 5 cars were accepted and unloaded by Georgia Pacific without incident.

33. Georgia Pacific rejected delivery of the other 44 cars on August 31, 2011, due to the presence of rocks and other debris.

34. These 44 rejected cars accrued demurrage between August 31, 2011, and December 9, 2011, for a total of 100 days.

35. Premium Coal failed to provide Norfolk Southern with forwarding instructions for the 17 rejected railcars that were not re-consigned to Georgia Pacific.

36. Because of Premium Coal's failure to provide Norfolk Southern with forwarding instructions, these 17 rejected railcars accrued demurrage between August 26, 2011, and December 9, 2011, for a total of 105 days.

37. Pursuant to the terms set forth in the Conditions of Carriage, Premium Coal was assessed a total of $1,058,400.00 in demurrage charges for railcars that originally moved as part of this shipment.

38. Although demand has been made for payment of these charges, Premium Coal has failed and/or refused to pay.

## FIRST CAUSE OF ACTION
**(Failure to Pay Rail Carrier Demurrage Charges)**

39. Norfolk Southern hereby incorporates the preceding paragraphs as if set forth fully at length herein.

40. Beginning in or about August of 2011 and continuing through or about December 2011, pursuant to 49 U.S.C. § 10746 and the terms of the Norfolk Southern's Conditions of Carriage, Premium Coal incurred an aggregate total of $1,353,600.00 in railcar demurrage charges.

41. These charges accrued as a result of Premium Coal's Shipments being rejected by J&J and Georgia Pacific due to the presence of rock and debris, and as a result of Premium Coal's failure to reconsign the railcars carrying its coal within the time period established by the Conditions of Carriage.

42. Norfolk Southern has performed all conditions precedent under 49 U.S.C. § 10746 and its Conditions of Carriage necessary to assess these demurrage charges to Premium Coal.

43. Although demand has been made for payment of the aforementioned charges, Premium Coal has failed and/or refused to pay.

**WHEREFORE**, plaintiff Norfolk Southern Railway Company respectfully demands that judgment be entered in its favor and against defendant Premium Coal Company, Inc., in the amount of $1,353,600.00 for railcar demurrage charges together with costs, attorney's fees, prejudgment interest, and such other relief as the Court may allow.

## SECOND CAUSE OF ACTION
### (Breach of Contract – In the Alternative)

44. Norfolk Southern hereby incorporates the preceding paragraphs as if set forth fully at length herein.

45. Premium Coal is named as the shipper (i.e. consignor) on the Norfolk Southern bills of lading.

46. The bills of lading are valid, binding, and enforceable contracts between Norfolk Southern and Premium Coal for each of the Shipments.

47. The material terms and conditions of these contracts between Norfolk Southern and Premium Coal were supplied by the Norfolk Southern Conditions of Carriage, and other documents incorporated by the bills of lading, as discussed herein.

48. By naming itself as the shipper on the bill of lading and tendering freight to Norfolk Southern for rail transportation, Premium Coal expressly and unambiguously agreed to be bound by the terms and conditions of the Conditions of Carriage for each of the Shipments.

49. In particular, Premium Coal agreed to pay all demurrage charges incurred as a result of its coal shipments being rejected due to the presence of rock and debris, and/or as a result of its failure to reconsign the railcars carrying its coal within the specified time period.

50. As set forth herein, between August 2011 and December 2011, Premium Coal incurred $1,353,600.00 in demurrage charges as a result of its shipments being rejected by J&J and Georgia Pacific due to the presence of rock and debris, and as a result of Premium Coal's failure to reconsign the railcars carrying its coal within the specified time period.

51. Premium Coal breached its contracts with Norfolk Southern because it has failed and/or refused to pay these demurrage charges when due and owing to Norfolk Southern.

7

52. Norfolk Southern has fulfilled its obligations in full to Premium Coal under the bills of lading and incorporated terms.

53. Norfolk Southern has incurred damages in the amount of $1,353,600.00 as a result of Premium Coal's breaching its contracts with Norfolk Southern.

**WHEREFORE**, plaintiff Norfolk Southern Railway Company respectfully demands that judgment be entered in its favor and against defendant Premium Coal Company, Inc., in the amount $1,353,600.00, together with attorney's fees, costs, prejudgment interest, and such other relief as the Court may allow.

### THIRD CAUSE OF ACTION
**(Unjust Enrichment – In the Alternative)**

54. Norfolk Southern hereby incorporates the preceding paragraphs as if set forth fully at length herein.

55. Between August 2011 and December 2011, Norfolk Southern provided a number of transportation services to Premium Coal, including storing Premium Coal's loaded railcars on Norfolk Southern's tracks for an extended period of time.

56. Norfolk Southern provided the aforementioned services because of Premium Coal's promise to compensate Norfolk Southern for the reasonable value of those services.

57. The services rendered by Norfolk Southern consisting of the use and storage of railcars on Norfolk Southern track have a reasonable value of $1,353,600.00.

58. Premium Coal has failed to pay for these services rendered by Norfolk Southern.

59. As a result, Premium Coal has unjustly received the benefit of the services provided by Norfolk Southern without paying for this benefit.

60. Allowing Premium Coal to retain the benefit from the services provided by Norfolk Southern without payment would be unjust.

**WHEREFORE**, plaintiff Norfolk Southern Railway Company respectfully demands that judgment be entered in its favor and against defendant Premium Coal Company, Inc., in the amount $1,353,600.00, together with attorney's fees, costs, prejudgment interest, and such other relief as the Court may allow.

## FOURTH CAUSE OF ACTION
### (Promissory Estoppel – In the Alternative)

61.     Norfolk Southern hereby incorporates the preceding paragraphs as if set forth fully at length herein.

62.     In August 2011, Premium Coal unambiguously promised Norfolk Southern that it would compensate Norfolk Southern for transporting and storing Premium Coal's railcars and freight.

63.     Norfolk Southern reasonably relied on the unconditional promises of Premium Coal to its own eventual detriment, and Norfolk's reliance was expected by, and foreseeable to, Premium Coal.

64.     To date, Norfolk Southern has made demands upon Premium Coal to tender the promised compensation due and owing, but Premium Coal has refused and/or otherwise failed to make such payments.

65.     Norfolk has suffered damages in the amount of $1,353,600.00 due to its reasonable reliance on the unconditional promises of Premium Coal.

**WHEREFORE**, plaintiff Norfolk Southern Railway Company respectfully demands that judgment be entered in its favor and against defendant Premium Coal Company, Inc., in the amount $1,353,600.00, together with attorney's fees, costs, prejudgment interest, and such other relief as the Court may allow.

## FIFTH CAUSE OF ACTION
### (Quantum Meruit– In the Alternative)

66. Norfolk Southern hereby incorporates the preceding paragraphs as if set forth fully at length herein.

67. Between August 2011 and December 2011, Norfolk Southern provided valuable transportation services to Premium Coal, as set forth herein.

68. Norfolk Southern stored Premium Coal's loaded railcars on Norfolk Southern's rail track for an extended period of time.

69. Premium Coal also knowingly accepted the services provided by Norfolk Southern.

70. Norfolk Southern expected compensation for storing Premium Coal's loaded freight cars at the time Norfolk Southern provided those services.

71. These services provided by Norfolk Southern have a reasonable value of $1,353,600.00.

72. Premium Coal has failed to compensate Norfolk Southern for these services despite demands upon Premium Coal to do so.

73. Premium Coal's receiving the benefit of Norfolk Southern's services without tendering compensation is unjust.

**WHEREFORE**, plaintiff Norfolk Southern Railway Company respectfully demands that judgment be entered in its favor and against defendant Premium Coal Company, Inc., in the amount $1,353,600.00, together with attorney's fees, costs, prejudgment interest, and such other relief as the Court may allow.

Respectfully Submitted,

**HULL BARRETT, PC**

By:   s/ George R. Hall
801 Broad Street, 7th Floor
Augusta, GA 30901
S.C. Bar Number 7856
Federal Court ID No. 1673
Telephone:   (706) 722-4481
Facsimile:   (706) 722-9779
Email:   GHall@hullbarrett.com

**Of Counsel:**

**KEENAN COHEN & HOWARD P.C.**
Paul D. Keenan (*pro hac vice to be filed*)
Christopher J. Merrick (*pro hac vice to be filed*)
One Pitcairn Place
165 Township Line Rd, Suite 2400
Jenkintown, PA 19046
Telephone:   (215) 609-1110
Facsimile:   (215) 609-1117
E-mail:   pkeenan@freightlaw.net
E-mail:   cmerrick@freightlaw.net

Dated: May 11, 2012                                         *Attorneys for Plaintiff*
*Norfolk Southern Railway Company*